IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. SAG-19-585 |
| | * | |
| | * | |
| RICHARD GAYLE | * | |
| | ******* | |

## MEMORANDUM OPINION AND ORDER

On March 6, 2020, Defendant Richard Gayle ("Gayle") had his initial appearance in this Court on charges of conspiracy to distribute controlled dangerous substances. ECF 91. Gayle has remained in pretrial detention at the Chesapeake Detention Facility ("CDF") since that time. Currently pending is Gayle's Motion for Review of an order of detention ("the Motion"), ECF 173, which appeals the detention orders issued by United States Magistrate Judge Deborah L. Boardman on April 23, 2020, ECF 120, 121. This Court has reviewed the briefing and exhibits submitted by the parties, ECF 181, 195, along with the pre-trial services report and supplements and Mr. Gayle's medical records provided to chambers by counsel. It has also listened to the recording of the detention hearing before Judge Boardman. No further hearing is necessary to resolve this Motion. *See* Loc. R. 105.6 (D. Md. 2018); *see also United States v. Martin*, Crim. No. PWG-19-140, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020) (finding "ample authority for the conclusion that the Court may decide the [appeal of detention] on the filings . . . as opposed to a hearing."). For the reasons that follow, Gayle's Motion will be denied without prejudice to reconsideration if the immigration detainer can be resolved.

**I.     Standard of Review**

Pretrial detention and release are governed by the Bail Reform Act ("BRA"), 18 U.S.C. §§ 3141, *et seq*. The government is permitted to seek pretrial detention of a defendant who poses a

serious risk of flight. *Id.* § 3142(f)(2(A). The BRA instructs the Court to seek "the least restrictive further condition or conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(c)(1)(B). However, if the Court finds after the hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order the detention of the person before trial." *Id.* § 3142(e)(1). Where, as here, a detention ruling is based on a defendant's risk of nonappearance, the Court must make the detention finding by a preponderance of the evidence. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam) ("With regard to the risk of flight as a basis for detention, the government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future court proceedings.") (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)); *see also United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir.1985).

The BRA permits a defendant who is ordered detained by a magistrate judge to "file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order," which "shall be determined promptly." *Id.* § 3145(b). The district judge must review the detention issue *de novo* "and must make an independent determination of the proper pretrial detention or conditions of release." *Stewart*, 19 F. App'x at 48.

**II.     Analysis**

Gayle asks this Court to review Judge Boardman's order of detention, and this Court has therefore engaged in a *de novo* review of her determinations. In this case, the order of detention is unusual, in that Judge Boardman made specific findings that conditions of release could be set that would adequately assure community safety and Gayle's appearance in court, save for one

issue: the detainer lodged against Gayle by Immigration and Customs Enforcement ("ICE"). After review of the relevant factors, this Court concurs entirely with Judge Boardman's conclusions and the disposition she reached.

Gayle has a decades-long history of criminal conduct and resulting deportations and removals from this country to his native Jamaica. Clearly, he once again returned to the United States unlawfully, prior to his arrest for the instant charge. The charged offense is a significant narcotics conspiracy, indicating that Gayle poses a danger to community safety. As Judge Boardman noted, however, Gayle does appear to have a viable third-party custodian and a residence, outside of Maryland, where he could be supervised on electronic monitoring. He also suffers from serious medical issues, placing him at enhanced risk of complications from COVID-19 infection. It goes without saying that Gayle faces a greater risk of contracting the virus from community spread in an incarcerative setting than he would face on lockdown at his custodian's residence.

This Court, however, has no option to release Gayle to the custodian's residence, because of the pending ICE detainer. A release order from this Court would simply release Gayle to that detainer, and he would be taken into immigration custody. The Government has represented, after its consultation with ICE authorities:

> If the Court released the defendant Richard Anthony Gayle ("defendant") pending trial in the above-styled action, he would go into ICE custody within 24 to 48 hours of his release. There is currently no space within the state of Maryland to house the defendant, but there are beds available nationwide.

ECF 195. Thus, if a release order were to issue, Gayle would be taken to an unknown ICE facility somewhere out-of-state, significantly undermining any reasonable assurance that he will be able to appear in court. During the pandemic, few if any jail facilities are allowing in-person visits from counsel, even if counsel desires to visit an incarcerated client. Telephonic conversations are

3

also limited in many facilities.  This Court has arranged for videoconferencing capabilities, both for court proceedings and for attorney "visits," in its local pretrial detention facilities, but could not guarantee such access if Gayle were to be transported to an unknown ICE facility.

All of that risk might be tolerable if it were likely to be temporary, and to lead to Gayle's reasonably prompt release from the ICE facility to his custodian's residence—indeed, Gayle's Motion asserts that his "immigration counsel will . . . immediately petition immigration authorities for his release."  ECF 173 ¶ 7.  However, as the Government has represented in its uncontested submission:

> The defendant, who was previously removed twice from the United States, is an aggravated re-entry felon based on his criminal record. Because the defendant is an aggravated re-entry felon, he falls within the mandatory custody category set forth in the Immigration and Nationality Act § 236(c). There are, however, a few exceptions to the general rule of mandatory custody: (i) a lack of bed space; (ii) a tremendous humanitarian concern that no contract facility will house the detainee (i.e., health issue); and/or (iii) no way for ICE to transport the detainee in his condition (i.e., unfit to travel). But these exceptions to the general rule of mandatory custody are extremely rare. And based on the information available, none of these exceptions appear to apply here.

ECF 195.  Thus, a release order from this Court would not result in Gayle's release to the custodian's residence because immigration authorities appear almost certain not to release him, given the absence of the aforementioned rare circumstances.  There is no lack of bed space nationally, per the Government's unchallenged representation, nor is there any evidence that "no contract facility will house the detainee" as a result of Gayle's condition.  Gayle is surely fit to be transported by ICE, too, since his own release plan requires transportation to New York.  As such, releasing Gayle would merely result in his transfer from CDF, where he has received adequate medical care since March, 2020, has not contracted COVID-19, and is able to participate in videoconferences with counsel and the Court, to an unknown ICE facility that might provide none of those benefits and leave him with no realistic path towards release, either.

As the situation currently stands, this Court is unable to effect any release conditions that would guarantee the safety of the community and Gayle's appearance in court. With the ICE detainer pending, his release would put him and other detainees in danger by virtue of his transfer between institutions, and might result in his being unable to participate effectively in court proceedings through the unknown duration of the pandemic. Accordingly, this Court concurs with Judge Boardman's conclusion. If the ICE detainer can be lifted, adequate conditions of release can be set, but with the detainer pending, this Court must order Gayle's continued detention.

### III.   Conclusion

For the reasons stated herein, Gayle's Motion for Review of Order of Detention, ECF 173, is **DENIED**.

Dated: January 7, 2021                                                                 /s/
                                                                    Stephanie A. Gallagher
                                                                    United States District Judge